UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-05-27-B-W |
| | ) | |
| ARTHUR MICHAEL KINSELLA, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S
MOTION FOR SEVERANCE OF COUNTS**

Arthur Michael Kinsella faces a three-count indictment for drug offenses and failure to appear. On November 13, 2007, he moved to sever the counts. *Def.'s Severance of Counts* (Docket # 84). Although joinder of the counts is proper under Federal Rule of Civil Procedure 8(a), Mr. Kinsella is entitled to a severance of Counts One and Two from Count Three, because he may wish to testify in defense of Counts One and Two and remain silent as to Count Three.

**I.   STATEMENT OF FACTS**

On March 19, 2005, Arthur Michael Kinsella, a Canadian citizen, was arrested in the United States on drug trafficking charges, and on April 12, 2005, a federal grand jury returned a two-count indictment against him: Count One alleged a violation of 21 U.S.C. §§ 846 and 841(a)(1), conspiracy to distribute controlled substances, and Count Two alleged a violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute controlled substances. *Indictment* (Docket # 16). On April 19, 2005, Mr. Kinsella pleaded not guilty. *Minute Entry* (Docket # 19). On May 10, 2005, Mr. Kinsella requested that he be permitted to live in Canada pending trial, *Def.'s Mot. to Modify Conditions of Release* (Docket # 32), and on the same day, the Court granted the motion, issuing an Amended Order Setting Conditions of Release, mandating that

Mr. Kinsella appear, as required, at the United States District Court in Bangor. *Am. Order Setting Conditions of Release* (Docket # 33).

On July 12, 2005, a federal grand jury returned a two-count superseding indictment, charging Mr. Kinsella with the same counts as in the original indictment, but changing the duration of the alleged conspiracy. *Superseding Indictment* (Docket # 51). After an extension of time due to Mr. Kinsella's inability to pay to travel from Canada to Bangor, the Court scheduled Mr. Kinsella's arraignment on the superseding indictment for August 2, 2005.

Mr. Kinsella did not appear for his arraignment and the Court issued a bench warrant for his arrest. *Order* (Docket # 62). Mr. Kinsella was arrested in Canada and subsequently was extradited to the United States. On November 9, 2005, the grand jury returned a three-count second superseding indictment, charging Mr. Kinsella with the same two counts of the first superseding indictment and adding a third count alleging that Mr. Kinsella violated 18 U.S.C. § 3146(a)(1), failure to appear. *Second Superseding Indictment* (Docket # 66).

Mr. Kinsella moved for severance on November 13, 2007. *Def.'s Mot. for Severance of Counts with Mem.* (Docket # 84) (*Def.'s Mot.*). The Government responded on December 4, 2007. *Government's Opp'n to Def.'s Mot. to Sever* (Docket # 90) (*Government's Opp'n*). On December 14, 2007, Mr. Kinsella replied, with affidavits from David Kelly, a solicitor in New Brunswick, Canada, and Matthew Erickson, an attorney in Maine. *Def.'s Reply to Government's Opp'n to Mot. for Severance* (Docket # 92) (*Def.'s Reply*); *Def.'s Reply Attach. 1*; *Def.'s Reply Attach. 2*.

II.     DISCUSSION

       A.     **Joinder of Counts under Federal Rule of Criminal Procedure 8(a)**

A defendant may be charged on an indictment or information with multiple counts if they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Thus, separate offenses may be charged together if there is "'substantial identity of facts or participants' underlying the charged offenses." *United States v. Yefksy*, 994 F.2d 885, 895 (1st Cir. 1993). Under First Circuit law, "'[s]imilar' does not mean 'identical.'" *United States v. Meléndez,* 301 F.3d 27, 35 (1st Cir. 2002) (citing *United States v. Edgar,* 82 F.3d 499, 503 (1st Cir.1996)). To determine whether counts are properly joined, the Court will consider "whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred." *United States v. Taylor,* 54 F.3d 967, 973 (1st Cir. 1995) (citations omitted). "A plausible basis for the joinder of multiple counts ordinarily should be discernible from the face of the indictment." *United States v. Fenton*, 367 F.3d 14, 21 (1st Cir. 2004).

### 1. Counts One and Two

Mr. Kinsella argues that the two oxycodone counts are not properly joined "[b]ecause the time period alleged in Count 1 does not cover the time period alleged in Count 2, Count 2 presumably is not part of any 'common scheme or plan' to distribute or possess with intent to distribute Oycodone." *Def.'s Mot.* at 2. He further argues that they cannot "practically be part of the 'same act or transaction,'" and that "they are not 'of the same character' because Count 1 is an inchoate crime, punishing an illegal agreement to distribute and to posses with intent to distribute Oxycodone, whereas Count 2 is a substantive crime." *Id.* at 3. The Government did not respond to Mr. Kinsella's arguments.

The First Circuit "has repeatedly held that a conspiracy count can be a sufficient connecting link between . . . multiple offenses that tips the balance in favor of joinder." *United States v. Rehal,* 940 F.2d 1, 3 (1st Cir. 1991). "For such a joinder to be proper, however, two requirements must be met: 1) the charges must have been joined in good faith and, 2) the joinder must have a firm basis in fact, considering the face of the indictment and the evidence adduced at trial." *Id.*; *United States v. Plumadore*, 221 F. Supp. 2d 12, 14 (D. Me. 2002). Mr. Kinsella does not claim that Counts One and Two were not joined in good faith.

Concerning the second requirement, considering the face of the indictment, joinder of Counts One and Two does have a firm basis in fact – the Counts are of the same or similar character. One Count charges that Mr. Kinsella conspired to violate § 841(a)(1) by possessing Oxycodone within the state of Maine with the intent to distribute it; the other charges that he violated § 841(a)(1) by intentionally and knowingly possessing Oxycodone within the state of Maine with the intent to distribute it. *See Meléndez*, 301 F.3d at 35-36 (finding that joinder was proper where the charges were aiding and abetting distribution of cocaine base and possession of cocaine base with intent to distribute); *United States v. Deluca*, 137 F.3d 24, 36 (1st Cir. 1998) (concluding that the Government can join multiple defendants in a single indictment provided that at least one count alleges a conspiracy and the indictment separately alleges that the defendants committed a substantive offense "during the course and in furtherance of the umbrella conspiracy or [continuing criminal enterprise]"). The differences between conspiracy to possess and actual possession are insufficient to deny joinder.

That several months separate the activity alleged in Counts One and Two does not change this determination. *See, e.g.*, *United States v. Turner*, 93 F.3d 276, 283-84 (7th Cir. 1996) (finding that even though separate charges of conspiracy to possess methamphetamine and

4

possessing methamphetamine with intent to distribute allegedly occurred during different time periods, "the indictment alleges the violation of two closely-related statutory prohibitions, and each count involves the same controlled substance"); *United States v. Shue*, 766 F.2d 1122, 1134 (7th Cir. 1985) (allowing joinder of several bank robberies occurring fifteen months apart from each other and emphasizing that evidence of the various robberies would overlap). Here, the allegations involve the same statute and similar modes of operation. *Edgar*, 82 F.3d at 503. While the alleged drug activity did not occur at exactly the same date, the "same or similar character" of the offenses permits joinder under Rule 8(a).

### 2. Count Three

Mr. Kinsella argues that "Count 3 charges a different type of crime than do Counts 1 and 2. Mr. Kinsella's actual guilt as to Counts 1 and 2 largely is irrelevant as to Count 3, because he may be found guilty of that count even if he is found to be not guilty of Counts 1 and 2." *Def.'s Mot.* at 3. The Government responds that a bail jumping charge may be joined with the underlying offense under Rule 8(a) and that "[i]t is well established that a charge of bail jumping or escape may be deemed sufficiently 'connected' with a substantive offense to permit a single trial, or at least where the charges are related in time, the motive for flight was avoidance of prosecution, and appellant's custody stemmed directly from the substantive changes." *Government's Opp'n* at 5 (quoting *United States v. Ritch*, 583 F.2d 1179, 1181 (1st Cir. 1978)); *see also United States v. Gabay*, 923 F.2d 1536, 1539-40 (11th Cir. 1991).

In *Ritch*, the Court affirmed the joinder of possession and importation of cocaine under 21 U.S.C. § 841(a) and failure to appear under 18 U.S.C. § 3150. *Ritch*, 583 F.2d at 1181. Here, as in *Ritch*, the charges are related in time, and the custody stemmed directly from the substantive charge. Finally, Mr. Kinsella asserts that his failure to appear was "due to fear of

5

overreaching from the prosecutor," *Def.'s Reply* at 1; thus, he concedes that his motive was, at least in part, to avoid prosecution on Counts One and Two. Counts One, Two, and Three are properly joined.

### B.   Severance of Count Three from Counts One and Two under Rule 14(a)

If proper joinder "appears to prejudice a defendant or the government, the court may order separate trials of counts . . . or provide any other relief that justice requires."[1]  Fed. R. Crim. P. 14.  According to the First Circuit:

> Generally, there are three types of prejudice that may result from trying a defendant for several different offenses at one trial: (1) the defendant may become embarrassed or confounded in presenting separate defenses; (2) proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissible in a separate trial for the second offense; and (3) a defendant may wish to testify in his own behalf on one of the offenses but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither.

*United States v. Scivola*, 766 F.2d 37, 41-42 (1st Cir. 1985) (citations omitted).  Mr. Kinsella argues that all three *Scivola* types of prejudice are present.

#### 1.   Mr. Kinsella's Potential Testimony

Mr. Kinsella explains that the reason he did not return to face the pending drug charges was that he had been subjected to an overly zealous and aggressive prosecution.  He claims that an Assistant United States Attorney called him a "criminal" in court and falsely accused him of smuggling cocaine into the United States and attempting to smuggle drugs into the Penobscot County Jail.  *Def.'s Reply Attach. 1* at 1.  He also claims that one of the Drug Enforcement Agency agents told him that if he did not admit to dealing drugs, they would arrest his mother, and repeatedly referred to him as a "dumb Canuck."  *Def.'s Reply Attach. 2* at 2.  He further

---

[1] Mr. Kinsella argues that Counts One and Two are improperly joined, but does not make a Rule 14 severance argument with regard to these counts.  His severance argument is limited to Count Three.

alleges that as he was ushered to his cell block in the Penobscot County Jail, a guard hollered out, "fresh meat," and that while *en route* to Canada, following his release on bail conditions, his vehicle was repeatedly stopped by Maine State Troopers. *Id.* at 2-4. He also asserts that he was subjected to repeated harassment at United States Customs whenever he attempted to cross the border. *Id.* at 3. He has presented the affidavit of his Canadian solicitor, who advised him not to return to the United States for trial, because "these matters would likely be unfair." *Def.'s Reply Attach. 1* at 1-2.

## 2. The First and Second Types of Prejudice under *Scivola*: Admissibility and Presentation of Evidence

Mr. Kinsella's argument arises from the different way the rules of evidence apply to the same evidence with regard to the drug counts and the failure to appear count.[2] On the drug charges, Mr. Kinsella's reason for his failure to appear – that he was worried about prosecutorial overreaching – could be admissible to rebut an inference of "consciousness of guilt." On the failure to appear charge, however, Mr. Kinsella's reason for his non-appearance would not be admissible, since it does not meet the legal standard for an affirmative defense. The differing ways the same evidence would play out in separate and joined trials forms the basis for his request for severance. The Court considers these issues in the following order: first, as to the failure to appear count alone; second, as to the drug counts alone; and then third, as to all three counts if tried together.

### a. Admissibility of the Defendant's Evidence as to Count Three

Mr. Kinsella has been charged with a failure to appear before a court as required by the conditions of release, a violation of 18 U.S.C. § 3146(a)(1). Mr. Kinsella himself acknowledges

---

[2] While *Scivola* provides separate tests for when a Defendant is "confounded" in presenting defenses and when evidence is inadmissible for some counts but not others, Mr. Kinsella conflates these issues, arguing that admission of evidence regarding Count One will result in a "mini-trial" when he explains his non-appearance as to Counts Two and Three. Thus, the Court considers these issues together.

7

that if Count Three were tried separately, he would not be able to take the stand and defend himself by explaining the reasons he did not appear. *Def.'s Mot.* at 3 ("Normally, the reasons why a defendant may not have appeared, if such non-appearance is otherwise voluntary, is irrelevant and inadmissible at trial.").

He is correct. The law allows an affirmative defense for failure to appear if the defendant can demonstrate that "'uncontrollable circumstances' prevented the person from appearing or surrendering, that the person did not contribute to the creation of such circumstances in reckless disregard of the requirement to appear or surrender, and that the person appeared as soon as such circumstances ceased to exist." 18 U.S.C. § 3146(c). The First Circuit has narrowly circumscribed the situations in which this defense may be properly asserted. These "circumstances" fall "into two categories, physical and mental." *United States v. Veilleux*, 40 F.3d 9, 10 (1st Cir. 1994); *see United States v. Odufowora*, 814 F.2d 73, 74 (1st Cir. 1987). As in *Veilleux*, Mr. Kinsella has made no claim of physical prevention. *Veilleux*, 40 F.3d at 10. This leaves uncontrollable duress, which the First Circuit has interpreted to "be sufficient to produce an unavoidable fear of serious bodily injury or death." *Id.* (quotation marks omitted). There is no proffer of evidence of uncontrollable duress within this definition.

Instead, Mr. Kinsella's excuse is similar to the excuse the First Circuit rejected in *Veilleux*: a loss of faith in the judicial system. *Id.* As the First Circuit wrote in *Veilleux*, if a loss of faith in the system or a fear of an improper sentence could justify a failure to appear, "[t]his would practically put appearance . . . on a voluntary basis." *Id.* In fact, in his memorandum, Mr. Kinsella admits as much. *Def.'s Mot.* at 3. Thus, if Count Three were tried separately, Mr. Kinsella's reasons for not appearing are likely inadmissible.

### b.     Admissibility of Evidence Explaining The Failure to Appear as to Counts One and Two

Mr. Kinsella first argues that evidence of his non-appearance should be inadmissible as to Counts One and Two.  He explains that if the Government were allowed to present evidence of his non-appearance, he would seek to provide an alternative explanation for his non-appearance to rebut the inference of consciousness of guilt – that he failed to appear due to numerous instances of prosecutorial and law enforcement overreaching.  Mr. Kinsella raises the specter that his alternative explanation would "create a mini-trial on peripheral issues, leading to confusion of the issues to be resolved by the jury, such evidence would not be admissible as the evidence of flight would be more prejudicial than probative."  *Def.'s Reply* at 4.

Contrary to Mr. Kinsella's position, however, the Court concludes that if the drug charges were tried separately, Mr. Kinsella's failure to appear would probably be admissible.  The Government notes that First Circuit law allows the Court to admit proof of flight: "Evidence of a defendant's flight . . . may be presented at trial as probative of a guilty mind if there is an adequate factual predicate creating an inference of guilt of the crime charged."  *United States v. Otero-Mendez*, 273 F.3d 46, 53 (1st Cir. 2001) (quoting *United States v. Candelaria-Silva,* 162 F.3d 698, 705 (1st Cir.1998)).  Here, the factual predicate is present.[3]  A defendant will sometimes argue that his flight or absence is insufficiently related to the charge to be admissible.  *See Candelaria-Silva*, 162 F.3d at 705; *United States v. Hernandez*, 995 F.2d 307, 314-15 (1st Cir. 1993).  But, here, there is no dispute that Mr. Kinsella's absence was directly related to the pending drug charges, since he was on bail for those charges.  *See United States v. Camilo Montoya*, 917 F.2d 680, 681-83 (1st Cir. 1990) (discussing evidence that the defendant knew that

---

[3] This Order assumes that at trial the Government will not rely solely upon Mr. Kinsella's failure to appear to prove its case and will present "[o]ther independent evidence establishing his drug dealings."  *United States v. Tracy*, 989 F.2d 1279, 1285 (1st Cir.  1993).

9

he was required to be present for trial and that he did not appear at trial on the same charges for which he was released on bail); *Tracy*, 989 F.2d at 1285 ("[T]he government established that Tracy had been scheduled for trial in August 1991 and had failed to appear"; his non-appearance was admissible at trial on the same charges). It is likely, therefore, that evidence of Mr. Kinsella's failure to appear would be admissible at the trial of the drug counts.

If evidence of his non-appearance were admitted, Mr. Kinsella could decide not to take the stand and to simply rely on the standard jury instruction, which reminds the jury that intentional flight alone is not sufficient to conclude that the defendant is guilty and that the jury should consider that there may be reasons for his actions that are fully consistent with innocence. *Camilo Montoya*, 917 F.2d at 683; *United States v. Hyson*, 721 F.2d 856, 864 (1st Cir. 1983); *Judge Hornby's 2007 Revisions to the Pattern Criminal Jury Instructions for the District Courts of the First Circuit* § 2.10.

Alternatively, he could elect to present evidence to rebut the inference of consciousness of guilt. Mr. Kinsella questions whether a jury would be unduly prejudiced under Rule 403 by this evidence, since his explanation involves accusations of other drug dealing and he fears this would sidetrack and prejudice the jury. This is an odd argument. Mr. Kinsella is not required to present rebuttal evidence. He may logically conclude that the rebuttal evidence is more harmful than helpful to his case, but the Court cannot protect him from the consequences of his own trial strategy. To argue that the Government's evidence is inadmissible because the Defendant's rebuttal contains evidence harmful to the Defendant is to argue a non-sequitur.[4]

---

[4] Mr. Kinsella's argument is premised on the questionable theory that evidence of government harassment would be unequivocally prejudicial to his defense of the drug charges. The evidence could be prejudicial to Mr. Kinsella; however, it is equally true that if a jury concluded that the Government had been harassing him, had threatened to bring unwarranted criminal charges against innocent persons, including his mother, had made unwarranted police stops of his vehicle, and had levied false accusations of criminal activity against him, it could conclude that this evidence is wholly consistent with his claim of overall innocence. Whether the explanation is more helpful than hurtful is a matter of trial strategy, not a ground for inadmissibility.

10

As to Mr. Kinsella's fear that such evidence could "create a mini-trial on peripheral issues, leading to confusion of the issues to be resolved by the jury," *Def.'s Mot.* at 4, if he decides to seek the admission of the rebuttal evidence, the Court will remain vigilant in enforcing Rule 403 by excluding evidence that confuses the issues, misleads the jury, creates undue delay, wastes time, or needlessly presents cumulative evidence. Fed. R. Evid. 403. Further, a motion to sever is not a motion *in limine* and the Court has not been asked to rule on the admissibility of any particular evidence.

The Court concludes that if the drug counts were tried separately, evidence of his non-appearance would likely be admissible.

### c. Admissibility of Evidence Explaining Mr. Kinsella's Failure to Appear if Counts One, Two, and Three Are Tried Jointly

Mr. Kinsella raises a number of potential issues if all three counts are tried together. First, he claims that evidence of his non-appearance would be inadmissible in a trial on the drug charges, but admissible in a trial on the failure to appear charge. *Def.'s Mot.* at 3. For the reasons just described, however, the Court disagrees. Evidence of his non-appearance would be admissible on all counts, regardless whether tried separately or together, and this does not present a reason for severing the trials.

Alternatively, Mr. Kinsella argues the second type of *Scivola* prejudice: If he takes the stand and explains his non-appearance to rebut the "consciousness of guilt" inference on the drug charges, his explanation would be inadequate as a defense and inadmissible on the failure to appear charge alone. The Court is not convinced that this presents an insurmountable problem.

The second type of prejudice under *Scivola* is "proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissible in a separate trial for the second offense." *Scivola*, 766 F.2d at 41-42. The issues

11

raised by Mr. Kinsella do not implicate this second type of prejudice. If evidence of guilt would be inadmissible on one of the charges, *Scivola* strikes the balance in favor of separate trials. But, here, evidence of Mr. Kinsella's guilt – namely that he failed to appear – would be admissible in both trials, so *Scivola* does not apply.

Evidence of Mr. Kinsella's defense – namely that he had good reason not to appear – would be admissible regarding the drug counts only. But, Mr. Kinsella has not demonstrated why this evidence, if admitted in the trial on Count Three, would be prejudicial to the trial of Count Three. The jury would hear – and be instructed to disregard as to Count Three – that he had what, in his mind, was a good reason to remain in Canada. Thus, while Mr. Kinsella's explanation may not be admissible as a *defense* to Count Three, this inadmissibility does not implicate *Scivola*'s second type of prejudice. An alternative would be for Mr. Kinsella not to present evidence of his reason for failing to appear. As to the drug counts, the jury could, but would not be required to, draw an inference of consciousness of guilt; as to the failure to appear count, the jury would not hear evidence that, if admitted, it would be instructed to disregard.

None of the other potential problems prevents a joint trial on the drug and failure to appear counts. Regarding the admissibility of evidence which may be applied to two of the three counts, it is not uncommon for the evidence to be admitted for some purposes and not for others and for some charges and not for others, nor is it uncommon for evidence to be treated differently among different charges depending on the charge.

It is true that if the drug and failure to appear counts were tried separately, Mr. Kinsella could present evidence to attempt to rebut the consciousness of guilt inference on the drug charges and not present the same evidence on the failure to appear count. However, to the extent that Mr. Kinsella's rebuttal on the drug counts could influence the jury in its deliberations on the

failure to appear count, the Court could address this possibility with cautionary and limiting instructions. The Court can give the standard jury instruction on the drug counts, instructing about the inference of consciousness of guilt and its substantial limitations. Regarding his explanation, if he offers one, the Court can instruct the jury that it may consider such evidence only on the drug counts to rebut the inference of consciousness of guilt, but may not consider such evidence on the failure to appear count. This does not present a reason for severing trials on the drug and failure to appear counts.

### 3. The Third Type of Prejudice Under *Scivola*: The Fifth Amendment

Mr. Kinsella cites the third type of prejudice described in *Scivola* – a desire to testify as to one offense, but not to others. He asserts that if the evidence regarding his non-appearance were admitted in the same trial as Counts One and Two, "his right not to incriminate himself will be jeopardized by the joinder of the Counts as [he] may wish to testify as to some of those counts, but not to others." *Def.'s Mot.* at 1. This he paints as a Fifth Amendment right not to incriminate himself. *Id.*

The third type of *Scivola* prejudice takes place when a defendant wishes to testify "on one of the offenses but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither." *Scivola*, 766 F.2d at 42. A court may sever properly joined counts when the defendant "makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." *United States v. Alosa*, 14 F.3d 693, 695 (1st Cir. 1994) (citations and quotations omitted). The defendant "must timely offer enough information to the court to allow it to weigh the needs of judicial economy versus the defendant's freedom to choose whether to testify as to a particular

13

charge." *United States v. Jordan*, 112 F.3d 14, 17 (1st Cir. 1997) (quoting *Scivola*, 766 F.2d at 43) (quotation marks omitted).

"[W]hile the courts zealously guard a defendant's Fifth Amendment right not to testify at all, the case law is less protective of a defendant's right to testify selectively . . . ." *Alosa*, 14 F.3d at 695. *Alosa* discussed "just how 'important' must be the defendant's proffered testimony or what kind of 'strong' reasons explain the need not to testify on other counts." *Id.* The First Circuit determined that a defendant, who was charged with both drug and related gun crimes, could not sever the gun crimes, in part because his desire to present evidence that he was a "gun enthusiast" did not present a "credible alibi." *Id.*

Here, Mr. Kinsella's proffered evidence is "important testimony" within *Alosa*. Mr. Kinsella has been charged with drug trafficking in Counts One and Two. Mr. Kinsella does not propose to present evidence of his actual innocence of these crimes or his subjective belief that he was not breaking the law. *See Cheek v. United States*, 498 U.S. 192, 203-04 (1991) (holding that a defendant is entitled to present his subjective belief that he did not violate the law, even if such belief is objectively unreasonable); *Alosa*, 14 F.3d at 695 (suggesting that a "credible alibi that only the defendant can supply showing him to have been elsewhere at the time of the crime" would be enough). Mr. Kinsella's proposed testimony does not address any elements of the offenses; but he does seek to blunt an inference of guilt from his non-appearance while on bail.

Further, *Alosa* requires that the evidence be something that "only the defendant can supply." *Id.* Here, if admissible at all, Mr. Kinsella's evidence of the governmental harassment, as he has described it, can be substantially presented through other witnesses. He would be free to argue that a jury may infer that his non-appearance was related to the harassment, not to his guilty conscience. However, if he were required to rely upon other witnesses, he would not be

14

able to present direct evidence of his "subjective belief" that he was going to be harassed if he returned to the United States.

This is sufficient. In *Jordan*, the First Circuit reversed a district court's refusal to sever, where the defendant wished to present testimony of his "subjective belief" in defense of one charge, but wished to remain silent as to other counts. *Jordan*, 112 F.3d at 17. The First Circuit concluded that similar evidence from another witness would be an ineffective substitute for the defendant's own testimony about his own subjective belief. *Id.* The circumstances here are a step removed from *Jordan*, since in *Jordan* the defendant's testimony went directly to an element of the charge and here, Mr. Kinsella's testimony would go only to an inference the jury could draw as a result of his failure to appear. But, the inference is "of guilt of the crime charged." *Otero-Mendez*, 273 F.3d at 53. On balance, the Court concludes that Mr. Kinsella has met the *Alsoa* criterion for "important testimony."

Mr. Kinsella also meets the second prong of the test – he has a "strong need to refrain from testifying on the other count." *Id.* If all three counts are tried at the same time, Mr. Kinsella's proposed testimony in Counts One and Two would constitute an admission that he is guilty of Count Three, since his proffered explanation would confirm his knowing absence and would not amount to a legitimate defense to the failure to appear charge. To explain his reasons for non-appearance, he would not only have to admit the *fact* that he did not appear, but also the fact that he knowingly failed to appear, two elements of 18 U.S.C. § 3146. Moreover, as his reason for not appearing is not a defense, the Court would likely instruct the jury to disregard his testimony.

In contrast, if Counts One and Two are tried separately Mr. Kinsella could choose to testify regarding the inference without that testimony adversely impacting his decision to testify

15

regarding Count Three. He could exercise his Fifth Amendment right not to testify as to Count Three and put the Government to its burden of proving that he is guilty of that Count. U.S. Const. amend. V. The Court concludes that Mr. Kinsella has met *Alosa*'s "strong need" prong.

*Scivola* instructs that the overriding test is between the defendant's freedom to choose whether to testify and considerations of judicial economy. If Counts One and Two were tried first and if Mr. Kinsella took the stand to rebut the inference of conscious guilt, his testimony would be admissible in the second trial on his failure to appear. To make severance an effective remedy, the failure to appear count would have to be tried first. Mr. Kinsella would have the freedom to choose whether to testify on Count Three. If he is not convicted, a later trial would proceed on Counts One and Two without reference to the earlier trial.[5] If he is convicted, the conviction would likely be admissible in the trial of Counts One and Two to establish the fact of his failure to appear, unless the parties agreed to an *Old Chief* stipulation. *See Old Chief v. United States*, 519 U.S. 172 (1997).

Judicial economy weighs heavily in favor of granting severance. The trial of Count Three appears unusually straightforward. The Court's own records reflect the conditions of release, the scheduling of his arraignment, and his failure to appear and Mr. Kinsella himself recognizes that the excuse he offers is not a legal defense. Of course, a separate trial on Count Three would impose additional costs in money and time on the jury, the lawyers, the witnesses, law enforcement, the Bureau of Prisons, and the Court generally. But, given the straightforward nature of the charge, to the extent judicial economy is a factor, it is less an issue here than in most cases.

---

[5] This presumes, as Mr. Kinsella's entire argument assumes, that he would not testify at the trial of Count Three. If he did testify, his testimony would likely be admissible in the trial of Counts One and Two.

Severance is not appropriate merely because Mr. Kinsella wishes to rebut the Government's argument regarding the inference that can be drawn from his failure to appear. *See, e.g.*, *United States v. Greo*, No. 85 Cr. 961, 1994 U.S. Dist. LEXIS 13876, *4-5 (S.D.N.Y. Sept. 30, 1994) ("The fact that [the defendant] has to make a choice whether to testify does not result in undue prejudice."). But, Mr. Kinsella has presented a convincing argument that the joint trial of the drug and failure to appear charges would prejudice his Fifth Amendment right not to testify and would force him to choose between incriminating himself as to Count Three and testifying as to Counts One and Two. Striking a balance in favor of the Defendant's right to avoid self-incrimination, as there are no compelling reasons to deny a severance, the Court will grant it.

### III.  CONCLUSION

The Court GRANTS the Defendant's Motion for Severance of Counts One and Two from Count Three (Docket # 84).[6]

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 11th day of January, 2008

---

[6] The Court will hold a conference with counsel to discuss scheduling issues.