UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-05-27-B-W |
| | ) | |
| ARTHUR MICHAEL KINSELLA, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTIONS *IN LIMINE* ON DEFENDANT'S WAIVER
OF ATTORNEY-CLIENT PRIVILEGE**

Because the Defendant disclosed his attorney's advice in an extradition proceeding, he

waived the attorney-client privilege and his attorney may testify on the subject matter the

Defendant disclosed.  The Court reserves ruling on the scope of the waiver.  In this failure to

appear case, the attorney may, in any event, testify as to whether he informed the Defendant of

the date, time, and place of the hearing without violating the attorney-client privilege, because

such information is not confidential.

I.      STATEMENT OF FACTS

        A.      Background to the Pending Motions

        Arthur Michael Kinsella is charged with failure to appear, a violation of 18 U.S.C. §

3146(a)(1).  *Second Superseding Indictment* (Docket # 66).  On March 19, 2005, Mr. Kinsella

was arrested in the United States on drug trafficking charges, and on April 12, 2005, a federal

grand jury returned a two-count indictment against him.  *Indictment* (Docket # 16).  After

pleading not guilty on April 16, 2005, Mr. Kinsella, a Canadian citizen, appeared in court on

May 10, 2005 and requested to be permitted to live in Canada pending trial.  *Def.'s Mot. to*

*Modify Conditions of Release* (Docket # 32).   On the same day, the magistrate judge granted the motion and issued an amended order, mandating that he appear as required in the United States District Court in Bangor, Maine; Mr. Kinsella signed a $5,000.00 unsecured appearance bond. *Am. Order Setting Conditions of Release* (Docket # 33); *Appearance Bond (Unsecured)* (Docket # 110).

On July 12, 2005, a federal grand jury returned a two-count superseding indictment, charging Mr. Kinsella with the same counts as in the original indictment, but altering the alleged duration of the conspiracy.  *Superseding Indictment* (Docket # 51).   After granting an extension to allow Mr. Kinsella to appear for arraignment on the superseding indictment after August 1, 2005, because of his inability to pay for transportation to Bangor and back, the Court set his arraignment for August 2, 2005.  *Notice of Hr'g* (Docket # 60).   Mr. Kinsella failed to appear and the Court issued a bench warrant.   *Order Granting Mot. for Warrant* (Docket # 62).   On November 9, 2005, the grand jury issued a second superseding indictment, adding a third count alleging he had failed to appear after having been judicially released.  *Second Superseding Indictment*.

The United States successfully sought Mr. Kinsella's extradition from Canada and, after extradition, he was arraigned and detained on September 27, 2007.  *Minute Entry* (Docket # 71); *Order of Revocation and Detention* (Docket # 73).  On November 13, 2007, Mr. Kinsella moved to sever Counts One and Two from Count Three.   *Def.'s Mot. for Severance of Counts with Mem.* (Docket # 84).   On January 11, 2008, the Court granted the motion and ordered that the trial of Count Three, the failure to appear count, take place first.   *Order on Def.'s Mot. for Severance of Counts* (Docket # 98).

Count Three is set for trial to commence on April 9, 2008.  *Notice* (Docket # 108).  On April 3, 2008, both the Government and Mr. Kinsella moved *in limine* to obtain a ruling on the proposed testimony of Mr. Kinsella's former attorney, Matthew Ericson.  *Mot.* in Limine (Docket # 128) (*Def.'s Mot.* in Limine); *Mot.* in Limine *of the United States for Pre-trial Ruling on Def.'s Waiver of Att'y-Client Privilege* (Docket # 129) (*Government's Mot.* in Limine).

### B.    The Pending Motions

In its trial brief, the Government revealed it intended to call Matthew Erickson, Mr. Kinsella's former attorney, to testify.  *Government's Trial Br.* at 4-5 (Docket # 120).  The Government represented that when it attempted to extradite him from Canada, Mr. Kinsella filed an affidavit against his extradition in which he claimed that Attorney Erickson had counseled him not to return to the United States.  *Id.*  The Government said that Mr. Erickson will deny instructing Mr. Kinsella not to return and, instead, will testify that he told Mr. Kinsella to return as directed.  *Id.* at 5.  Noting that Mr. Kinsella would likely object on attorney-client privilege grounds, the Government contended that he had waived his privilege by disclosing his communications with Mr. Erickson during the extradition proceedings.  *Id.*

Mr. Kinsella agrees that the Government can call and question Mr. Erickson "about a very limited topic:  whether [he] notified Mr. Kinsella about the time and place of the hearing." *Def.'s Mot.* in Limine at 2 (citing *United States v. Gray*, 876 F.2d 1411 (9th Cir. 1989)). However, Mr. Kinsella objects to any testimony about the actual advice Mr. Erickson gave him. *Id.* at 2-3.  Mr. Kinsella says that this line of inquiry would be irrelevant to the trial issues and notes that the Government does not intend to call Mr. Erickson to demonstrate the truth of what Mr. Kinsella said in his affidavit, but to demonstrate that what he said was not true.  *Id.* at 2.

3

### C.      The Affidavit

To its motion, the Government attached Mr. Kinsella's Canadian affidavit. *Government's Mot.* in Limine at Ex. B (*Canadian Aff.*).  Regarding Mr. Erickson, the affidavit stated:

> Subsequent to my consultation with Mr. Kelly [Mr. Kinsella's Canadian solicitor] in May 2006, Mr. Erickson visited me in Saint John, New Brunswick on one occasion, possibly in June 2005, for a solicitor-client interview at my residence while I was released from custody on conditions in relation to the said criminal charges.  During this interview, I told Mr. Erickson that a Saint John lawyer, David Kelly, with whom I consulted about this matter during my release had counseled me not to return to Bangor.  Mr. Erickson advised me that I should take the advice of Mr. Kelly.  He also suggested to me that, Daniel Perry, the Assistant United States Attorney, District of Maine, would not want me to return because I would raise allegations against him of false charges and malicious prosecution and because these allegations might jeopardize chances of his promotion in relation to a position he anticipated taking in Portland, Maine.

*Id.* at ¶ 25.

### II.     DISCUSSION

### A.      The Elements of the Offense

To prove a violation of 18 U.S.C. § 3146(a)(1), the Government must establish the following elements: (1) That the defendant was previously charged in this court with a felony with a maximum punishment of 20 years; (2) That the defendant had been released on bond by a United States Magistrate Judge on condition that he appear in court; (3) That the defendant failed to appear in court as required; and, (4) That the defendant willfully[1] failed to appear in court as

---

[1] The statute states that the defendant must have acted knowingly.  Courts have construed the requirement as meaning "that appellant was released under the statute, that he was required to appear in court, that he knew he was required to appear, that he failed to appear, and that his failure was willful."  *United States v. Stewart*, 104 F.3d 1377, 1380 (D.C. Cir. 1997) (citing *Weaver v. United States*, 37 F.3d 1411, 1412-13 (9th Cir. 1994)).

Legislative history from the Bail Reform Act indicates that Congress, in 18 U.S.C. § 3146, "by use of the term 'knowingly' as a mental state requirement . . . intend[ed] to perpetuate the concept of 'willfully'" which appears in the [former] bail jumping statute [18 U.S.C. § 3150 (amended) ].  S. Rep. No. 98-225, at 31-32 (1984), *reprinted* in 1984 U.S.C.C.A.N. 3182, 3214-15."

required.[2]  *See Government's Trial Br.* at 4 (Docket # 120); *Def.'s Trial Br.* at 3 (Docket # 125) (citing *Fifth Cir. Pattern Criminal Jury Instruction* § 2.86 (1986)).

### B.     The Stipulations of the Parties

To reduce the number of witnesses and shorten the trial, the parties have agreed to a number of stipulations, including (1) that Mr. Kinsella was charged in a criminal indictment with a crime which is a felony and carries a maximum penalty of twenty years;[3] (2) that the Court issued Orders on April 1, 2005 and May 10, 2005 setting conditions of release and that the judge informed him on each occasion that if he failed to appear, he could be prosecuted for failing to do so; (3) that Mr. Kinsella made two promises in open court to the magistrate judge to return to Bangor for all proceedings; (4) that copies of relevant court documents are admissible; and, (5) that Mr. Kinsella's arraignment scheduled for August 2, 2005 is a court proceeding within the meaning of § 3146(a)(1).  *Government's Trial Br.* at 9-10; *Def.'s Trial Br.* at 2; *Government's Request for Additional Jury Instruction* (Docket # 138) (regarding the fifth stipulation).

### C.     The Meaning of Willfully

The effect of these stipulations is to focus the trial on the fourth element:  whether Mr. Kinsella willfully failed to appear.  The Government and Mr. Kinsella have proposed the same language for a jury instruction that defines "willfully": "To act 'willfully' means to act voluntarily and intelligently and with the specific intent that the underlying crime be committed – that is to say, with bad purpose, either to disobey or disregard the law – not to act by ignorance, accident or mistake."  *See* Judge D. Brock Hornby's 2008 Revisions to Pattern Criminal Jury

---

*United States v. Marrero,* 219 Fed. Appx. 892, 898, (11th Cir. 2007).

[2] Mr. Kinsella suggests slightly different language for the fourth element, saying that the Government must prove that the defendant "knew he was required to appear on that date."  *Def's Trial Br.* at 3.  Knowledge that he was required to appear on a particular date, however, seems subsumed by the commonly agreed upon requirement of willfulness.

[3] While this element is not included in the list of the Government's stipulations, Mr. Kinsella stated in his trial brief that he would stipulate to this statement.  *Def.'s Trial Br.* at 1.

Instructions for the District Courts of the First Circuit § 2.16; *Government's Requested Jury Instructions* at 2 (Docket #122); *Requested Jury Instructions of Def. Arthur Michael Kinsella* at 18 (Docket # 125).

### D.    The Court Order

In its Order on severance, the Court reviewed Mr. Kinsella's explanation for his failure to appear as required.  *United States v. Kinsella*, 530 F. Supp. 2d 356, 361 (D. Me. 2008).  In his memorandum on the motion for severance, which is consistent with the contents of his Canadian affidavit, Mr. Kinsella essentially said that he worried about prosecutorial overreaching, law enforcement harassment, and basic unfairness.  *Def.'s Reply to Government's Opp'n to Mot. for Severance* at 1-2 (Docket # 92); *Canadian Aff.*

The question was whether these explanations generated the affirmative defense of "uncontrollable circumstances" under 18 U.S.C. § 3146(c).  The Court concluded they did not.  *Kinsella*, 530 F. Supp. 2d at 361-62.  The First Circuit has narrowly circumscribed the situations in which this defense may be properly asserted.  *United States v. Veilleux*, 40 F.3d 9, 10 (1st Cir. 1994); *United States v. Odufowora*, 814 F.2d 73, 74 (1st Cir. 1987).  As Mr. Kinsella himself conceded, he would not be able to take the stand and defend himself from the failure to appear charge by explaining these reasons for his non-appearance.  *Kinsella*, 530 F. Supp. 2d at 361.  The Court concluded that Mr. Kinsella's excuse would likely be inadmissible because it is "similar to the excuse the First Circuit rejected in *Veilleux*:  a loss of faith in the judicial system." *Id.* (citing *Veilleux*, 40 F.3d at 10).

### E.    Attorney Erickson's Proposed Testimony

The Government says that if allowed to testify, it anticipates Mr. Erickson will say:

Upon information and belief, Attorney Erickson will testify that he had counseled his former client regarding the importance of appearing at court for all

6

proceedings including the August 2, 2005 arraignment, deny instructing the defendant that he should not return to the United States, and state that the defendant made admissions which show that the failure to appear in court as required was willful.

*Government's Mot.* in Limine at 2.  The context of Attorney Erickson's proposed testimony is significant.  The Government seeks to call him during its case-in-chief for three purposes:  (1) to demonstrate that what Mr. Kinsella swore in his Canadian affidavit is untrue; namely, that when the affidavit states that Mr. Erickson concurred with his Canadian solicitor's advice that he should not to return to the United States, Mr. Kinsella was lying; (2) that Mr. Kinsella's statements to Attorney Erickson confirm his failure to appear was willful; and, (3) that Mr. Erickson had communicated the requirement that Mr. Kinsella appear at all court proceedings including the August 2, 2005 arraignment.  *Id.*  The purpose for which Mr. Erickson is called is intrinsic to whether the testimony is admissible.

      **F.**    **The Admissibility Issue**

            **1.**    **Admissibility of the Canadian Affidavit**

                  **a.**    **Admissibility of the Affidavit for the Truth of its Contents**

The first question is whether the Government's proposed evidence would be admissible regardless of the attorney-client context.  In other words, if Mr. Kinsella had been given this advice by a non-lawyer third party, would their conversation be admissible?  A preliminary question is whether the Canadian affidavit would be admissible in the Government's case-in-chief, since the affidavit provides the necessary context for the admission of Attorney Erickson's testimony.  The affidavit consists of twenty-seven paragraphs, nearly all of which address Mr. Kinsella's claim that he would be "falsely charged and maliciously prosecuted in the United States of America," *Canadian Aff.* at ¶ 6, an improper defense.  *Kinsella*, 530 F. Supp. 2d at 361-

62. If Mr. Kinsella could not introduce this evidence in his defense, the Government cannot introduce it in its case-in-chief.

The disputed paragraph begins by referring to the preceding paragraph in which Mr. Kinsella describes his Canadian solicitor's advice. *Canadian Aff.* at ¶¶ 24, 25. The affidavit states that Assistant United States Attorney Daniel Perry had informed his Canadian solicitor, David Kelly, he intended to charge Mr. Kinsella with smuggling cocaine into Penobscot County Jail, a charge Mr. Kinsella said was false. It goes on to aver that Mr. Perry had called him a "criminal" in court. *Id.* at ¶ 24. As a consequence, Mr. Kelly advised him not to return to the United States "because I was at risk of being falsely charged and maliciously prosecuted." *Id.*

Paragraph twenty-five makes numerous references to Mr. Kelly's advice. *Id.* ("Subsequent to my consultation with Mr. Kelly in May 2006, Mr. Erickson visited me . . . . During this interview, I told Mr. Erickson that a Saint John lawyer, David Kelly, with whom I had consulted about this matter during my release had counseled me not to return to Bangor. Mr. Erickson advised me that I should take the advice of Mr. Kelly."). These references would be inadmissible. Mr. Kelly's advice was based on a legal defense that the Court has ruled inadmissible – the loss of faith in the system defense. Again, if Mr. Kinsella cannot admit these statements in his defense, the Government cannot do so in its prosecution. The admission of such evidence would be inadmissible under Rule 403, because it would confuse the issues and mislead the jury. Fed. R. Evid. 403.

This then leaves only the last statement in paragraph twenty-five, which contains allegations of prosecutorial impropriety that Mr. Erickson allegedly made against AUSA Perry: that Mr. Perry did not want Mr. Kinsella to return because his allegations of malicious prosecution could affect Mr. Perry's chances for a promotion. Again, this evidence is

8

inadmissible under Rule 403.   The contradiction between Mr. Kinsella's assertion that Mr. Erickson told him that the prosecutor did not want him to return to the United States and the extradition proceeding is obvious, but the resolution of these issues would create confusion and would mislead the jury as to the narrowness of the issue before the Court.

### b.   Admissibility of the Affidavit Not For the Truth of Its Contents

The Government might assert that the contents of paragraph twenty-five are admissible not for the truth of its contents, but to provide the context for Mr. Erickson's testimony. However, the contents of the Canadian affidavit so clearly raise the improper defense of loss of faith in the criminal justice system, the Court would not admit paragraph twenty-five in any event.   The Government would present evidence that Mr. Kinsella received legal advice not to return based on serious allegations of prosecutorial overreaching and misconduct.   Whether the allegations were true would not be further explicated.    But, the Court would be required to give a limiting instruction to the jury that they could not consider the statements in the affidavit for the truth of the allegations, but only to establish a context for Mr. Erickson's testimony that Mr. Kinsella was not telling the truth.   The risk of confusion is palpable.   *See* Fed. R. Evid. 403.

### c.   The Canadian Affidavit:  Summary

The Court concludes that the Canadian affidavit is inadmissible in the Government's case-in-chief either for the truth or for the contextual value of its contents.   Once the Canadian affidavit is inadmissible, Mr. Erickson's proposed testimony about his advice to Mr. Kinsella would also be inadmissible, absent any other basis for its admission.

### 2.   The Attorney-Client Privilege

### a.   Communication of Trial Dates in Failure to  Appear Cases

To be clear, the Court agrees with the parties that Mr. Erickson may testify without violating the attorney-client privilege as to whether he informed Mr. Kinsella about the time and place of the arraignment.  In failure to appear cases, although the First Circuit has not ruled directly on the point, courts have held that there is no attorney-client privilege applicable to the communication of trial dates.  *United States v. Gaulden*, 95 Fed. Appx. 489, 490 (4th Cir. 2004); *United States v. Gray*, 876 F.2d 1411, 1415-16 (9th Cir. 1989); *United States v. Innella*, 821 F.2d 1566, 1567 (11th Cir. 1987); *United States v. Bourassa*, 411 F.2d 69, 74 (10th Cir. 1969).  The attorney-client privilege protects "not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice."  *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 883 (1st Cir. 1995) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981));  *In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003) [hereinafter *XYZ Corp.*].  Information from a lawyer to a client to the effect that the client had to appear in court at a certain date and time is not confidential information within the meaning of the privilege.

### b.      Waiver

This leads to the final question:   whether Mr. Kinsella waived the attorney-client privilege when during the extradition process, he described what Mr. Erickson advised him. The law recognizes both voluntary and implied waiver.  *XYZ Corp.*, 348 F.3d at 22-23; 2-503 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* §§ 503.40-41 (Joseph M. McLaughlin ed., 2nd ed. updated Feb. 19, 2008).  But, determining whether there has been a waiver is challenging.

> [Waiver is] a loose and misleading label for what is in fact a collection of different rules addressed to different problems.  Cases under this "waiver" heading include situations as

> divergent as an express and voluntary surrender of the privilege, partial disclosure of a privileged document, selective disclosure to some outsiders but not all, and inadvertent overhearings or disclosures.

*United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997).  Because Mr. Kinsella is invoking the privilege, he "bears the burden of establishing that it applies to the communications at issue and that it has not been waived."  *XYZ Corp.*, 348 F.3d at 22.

Where a client "chooses to share communications" outside of what the First Circuit has described as a "magic circle," consisting of individuals such as secretaries, interpreters, counsel for cooperating co-counsel, or a parent present when a child consults a lawyer, the courts "usually have refused to extend the privilege."  *Mass. Inst. of Tech.*, 129 F.3d at 684.  In fact, the "privilege is narrowly confined because it hinders the courts in the search for truth" and "[f]airness is also a concern where a client is permitted to choose to disclose materials to one outsider while withholding them from another."  *Id.* at 685.

Here, Mr. Kinsella elected to reveal his attorney's advice regarding the very issue before the Court:  his mental state regarding return to the United States to face criminal charges.  He revealed the advice during an extradition procedure in Canada, involving the same charges for which he was on pretrial bail, and in an effort to avoid extradition and defeat his obligation to appear.  The direct relevance of Attorney Erickson's advice to Mr. Kinsella is apparent.  If his United States lawyer told Mr. Kinsella to appear as required, this evidence goes directly to whether his failure to appear was willful, which is the central focus of the trial.

The relevance of Mr. Kinsella's revelation of Mr. Erickson's advice in the extradition proceeding is not precisely explicated, but it appears analogous to an "advice of counsel" defense; namely, that because both his Canadian and United States attorneys had advised him not to return, Canada should not force him to do so.  In *XYZ Corporation*, the First Circuit observed

that an "advice of counsel" defense is a "paradigmatic example" of an implied waiver, because it "puts the nature of [the] lawyer's advice squarely in issue, and, thus, communications embodying the subject matter of the advice typically lose protection." *XYZ Corp.*, 348 F.3d at 24.

Here, it is true that Mr. Kinsella has not asserted his attorney's advice as a defense to the failure to appear charge. But, the First Circuit has rejected the notion of selective waiver. *See Mass. Inst. of Tech.*, 129 F.3d at 686 (stating that "courts have been unwilling to start down this path – which has no logical terminus – and we join in this reluctance"); *Cavallaro v. United States*, 284 F.3d 236, 246-47 (1st Cir. 2002) (stating that "[g]enerally, disclosing attorney-client communications to a third party undermines the privilege"); *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981); *United States v. Morrell-Corrada*, 343 F. Supp. 2d 80, 86 (D.P.R. 2004) ("Generally, the disclosure of attorney-client communications by the client to third parties destroys the privilege *in toto*."); *In re Tyco Int'l, Inc. Multidistrict Litig.*, No. 02-352-B & 02-1357-B, 2004 U.S. Dist. LEXIS 4541, at *4 (D.N.H. March 19, 2004).

Further, the extradition process appears to be a judicial proceeding within the meaning of *XYZ Corporation*. Finally, the fact that Mr. Kinsella may have misstated or misrepresented Mr. Erickson's actual advice does not maintain the privilege against the true advice. *United States v. Jacobs*, 117 F.3d 82, 90 (2d Cir. 1997) ("An inaccurate statement of a privileged communication waives the privilege with respect to that communication."); *United States v. Mendelsohn*, 896 F.2d 1183, 1188-89 (9th Cir. 1990).

The Government claims that it should be allowed to ask Mr. Erickson not only about whether he gave Mr. Kinsella advice about returning to the United States at the June 2005 meeting in Saint John, New Brunswick, but what advice he gave Mr. Kinsella about this issue on other occasions. There is authority for the proposition that a client's disclosure "not only waives

the privilege as to the specific information revealed, but also waives the privilege as to the subject matter of the disclosure." *Hawkins v. Stables*, 148 F.3d 379, 384 (4th Cir. 1998). In *Fort James Corp.*, the Federal Circuit stated that the "widely applied standard for determining the scope of the waiver of attorney-client privilege is that the waiver applies to all other communication relating to the same subject matter." *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005).

 *Fort James* listed a number of factors for determining the scope of the waiver, including the "circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties . . . ." *Id.* at 1349-50. Without a concrete factual underpinning, the Court cannot determine pretrial what portions of Mr. Erickson's advice will be admissible and will reserve ruling until trial. However, in *XYZ Corp.*, the First Circuit urged caution in finding implied waivers and the Court will apply this caution in determining the scope of the waiver. 348 F.3d at 22-23.

### G. The Context of Attorney Erickson's Proposed Testimony

 Finally, the Court notes that this is not a situation where Attorney Erickson's testimony would be offered for impeachment. *See* Fed. R. Evid. 801(d)(1). If Mr. Kinsella takes the stand and places the contents of the affidavit at issue by saying that he received specific advice from Mr. Erickson, which Mr. Erickson would deny giving, Attorney Erickson's testimony is likely admissible in rebuttal, since Mr. Kinsella would have disclosed the advice and waived his claim of confidentiality. *See XYZ Corp.*, 348 F.3d at 22 ("When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised."). Further, Mr. Kinsella has not joined the issue of his attorney's advice by argument. There are, of course, a variety of ways in addition to his own testimony that Mr.

Kinsella could open the door during trial to his former lawyer's advice, including information beyond the testimony ruled admissible by this Order.

## III.    CONCLUSION

The Court concludes that the Government may call Attorney Erickson to confirm that he told Mr. Kinsella about the date, time, and place of his arraignment on August 2, 2005.  This is not legal advice and it is admissible.  The Court also concludes, however, to the extent the Canadian affidavit forms the foundation of Attorney Erickson's testimony, neither the affidavit nor Mr. Erickson's testimony in response is admissible during the Government's case-in-chief. *See Kinsella*, 530 F.Supp. 2d at 361-62.  Finally, however, the Court concludes that Mr. Kinsella did waive attorney-client privilege when he expressly stated the advice Attorney Erickson allegedly gave him regarding his return to the United States to face then pending charges.  The Court will rule on the scope of the waiver during trial.

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE


Dated this 8th day of April, 2008

14