UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CR-05-27-B-W |
| ) | |
| ARTHUR MICHAEL KINSELLA ) | |

**ORDER DENYING MOTION FOR NEW TRIAL**

The Court concludes that evidence the trial judge was the sentencing judge for a government witness and a fleeting reference to the Defendant's current incarceration do not justify a new trial.

I.   **STATEMENT OF FACTS**

On April 12, 2005, a federal grand jury indicted Arthur Michael Kinsella, alleging two violations of federal drug trafficking laws: Count One – from not later than January 2003 to no earlier than June 2004, he engaged in a conspiracy to possess with the intent to distribute Oxycodone, a violation of 21 U.S.C. § 846; and, Count Two – on March 19, 2005, he possessed with the intent to distribute Oxycodone, a violation of 21 U.S.C. § 841(a)(1).[1]  *Indictment* (Docket # 16).  On July 12, 2005, a superseding indictment issued, extending the period of the alleged conspiracy to December 21, 2004.  *Superseding Indictment* (Docket # 51).  Trial began on August 11, 2008 and on August 14, 2008 the jury issued a verdict of guilty on both counts.

---

[1] Following indictment, Mr. Kinsella was released on bail on April 1, 2005 with geographical restrictions. *Order Setting Conditions of Release* (Docket # 14). Mr. Kinsella, a Canadian citizen, moved to be allowed to go back and live in Canada with the promise to return as required. *Def.'s Mot. to Modify Conditions of Release* (Docket # 32). The Court granted the motion, issuing an amended release order, mandating that he appear, as required, at the United States District Court in Bangor. *Am. Order Setting Conditions of Release* (Docket # 33). When Mr. Kinsella did not appear for arraignment on a superseding indictment, he was indicted for failure to appear, a violation of 18 U.S.C. § 3146(a)(1). *Second Superseding Indictment* (Docket # 66). After extradition to the United States, Mr. Kinsella moved to sever the drug trafficking counts from the failure to appear charge. *Def.'s Mot. for Severance of Counts* (Docket # 84). The Court granted the motion. *Order on Def.'s Mot. for Severance of Counts* (Docket # 98). On April 10, 2008, a jury returned a verdict of guilty on the failure to appear charge. *Verdict Form* (Docket # 152). The Defendant's motion for new trial addresses only the trial relating to the drug trafficking charges.

*Verdict Form* (Docket # 209).  On August 21, 2008, Mr. Kinsella moved for a new trial.  *Mot. for New Trial* (Docket # 214) (*Def.'s Mot.*).  On October 6, 2008, the Government objected; and, on October 16, 2008, the Defendant replied.  *Gov't's Resp. to Def.'s Mot. for New Trial* (Docket # 219) (*Gov't's Resp.*); *Def.'s Reply to Gov't's Resp. to Mot. for New Trial* (Docket # 224) (*Def.'s Reply*).

      **A.**    **The Sentencing and Trial Judge**

Mr. Kinsella's main objection involves a portion of the testimony of Christopher Hitchcock, a Government witness.  As part of a plea agreement with the Government, Mr. Hitchcock pleaded guilty to a drug trafficking offense and agreed to testify against Mr. Kinsella. *See United States v. Hitchcock*, CR-06-83-B-W (D. Me. Oct. 27, 2008), *Order Denying Mot. for Reduction of Sentence* at 3 (Docket # 38).  On September 25, 2008, this Court sentenced Mr. Hitchcock to twenty-four months incarceration, thirty-six months supervised release, and a $100 special assessment.  *United States v. Hitchcock*, CR-06-83-B-W (D. Me. Oct. 27, 2008), *J.* (Docket # 31).

At trial, the Government claimed that Mr. Kinsella came from Canada to Bangor on March 19, 2005 to sell Oxycodone to Mr. Hitchcock and the Government called Mr. Hitchcock as a witness to demonstrate Mr. Kinsella's complicity.  During direct examination of Mr. Hitchcock, the Government introduced his plea agreement into evidence.  *Tr.* 9:1-5 (Docket # 217) (*Tr. 217*).  On cross-examination, Mr. Hitchcock was questioned about his agreement with the Government.  On re-direct examination, the following dialogue took place:

> Q.  When you were being questioned by Attorney Villa regarding your sentence, your cooperation agreement with the government, and particularly when you were sentenced, do you remember where you were sentenced, where your sentence took place?

> A. Right here.
>
> Q. When you say right here, what do you mean?
>
> A. In Bangor, this courthouse.
>
> Q. Was it in this courtroom?
>
> A. I believe so, yes.
>
> Q. Do you remember who sentenced you?
>
> A. Ah, Judge John Woodcock.
>
> Q. Okay. And who decided what your sentence was?
>
> A. I believe he did.
>
> Q. The judge?
>
> A. The judge.

*Tr. 217* 141:4-19. The Defendant did not object to this line of questioning. He followed up on re-cross-examination:

> Q. Well, the judge decided on your sentence, right?
>
> A. I believe so, yes.
>
> Q. Okay. But, they asked the judge to give you less time, right?
>
> A. It was part of my agreement - - part of my agreement - - ah, plea, I think, to get a reduction.
>
> Q. You agree to cooperate?
>
> A. Yes.
>
> Q. Right?
>
> A. Yes.
>
> Q. They agree to ask the judge for less time for you?

      A.  It's part of the plea.

      Q.  That's the deal, right?

      A.  Yeah.

*Tr. 217* 141:24-25; 142:1-12.  The Defendant contends that eliciting the fact that the sentencing judge in Mr. Hitchcock's case was the same person as the trial judge in his case constituted prosecutorial misconduct that entitles him to a new trial, because it improperly inferred that the trial judge had made an evaluation of Mr. Hitchcock's credibility.  *Def.'s Mot.* at 1-2.

      **B.**      **The Government Witness, the Sentencing Judge, and Drug Quantity**

Mr. Kinsella's second point is that by emphasizing that the trial judge was Mr. Hitchcock's sentencing judge, the Government made it difficult for the defense to cross-examine Mr. Hitchcock on an issue of drug quantity.  *Id.* at 2.  After Mr. Hitchcock's Presentence Report (PSR) was drafted, Attorney Pat Perrino, his defense attorney, objected to the drug quantity portion of the PSR.  Mr. Kinsella attached to his motion a copy of a letter from Mr. Perrino, asserting that the "ultimate target never had more than 90 pills to sell, and never was there a transaction involving 200 to 300 pills" and further that Mr. Hitchcock had "consistently stated that the total number of pills he brokered was approximately 300, not at one time, but a total of all the contacts."  *Id.* at Ex. B at 1.  Mr. Kinsella points to the Court's finding at the Hitchcock sentencing that Mr. Hitchcock was responsible for 739.68 kilograms of marijuana equivalent.  *Id.* at Ex. A at 28:15-20.  He asserts that this finding translates into 1,380, not 300 pills.  *Id.* at 2.  Armed with a contradiction between Mr. Hitchcock's drug quantity claim before sentencing and the findings at sentencing, Mr. Kinsella intended to cross-examine Mr. Hitchcock on this disparity.  He complains he was stymied, because the Hitchcock sentencing judge was the Kinsella trial judge and the defense could not therefore "ask for the Court to take judicial notice

of such fact because doing so would, in essence, render the Judge as a witness, which is improper under the rules of evidence." *Id.*

### C. Mr. Kinsella's Detention

Finally, Mr. Kinsella objects to prosecutorial questions that elicited responses from a Government witness that revealed he was incarcerated not only at the time he made certain telephone calls from prison, evidence of which was admitted during trial, but also that he was still incarcerated at the time of trial. *Id.* at 3. Specifically, the Government called Lt. Linda Golden of the Penobscot County Sheriff's Office as an authenticating witness to identify recordings she had made of Mr. Kinsella's telephone conversations while he was in prison. After she identified herself as an assistant jail administrator, the following exchange took place:

Q. Do you know the defendant in this case?

A. I know who - - I know he's in our facility now. I don't personally know him, no.

*Tr.* 4:12-14 (Docket # 218) (*Tr. 218*).

## II. DISCUSSION

### A. Standard for New Trial

Federal Rule of Criminal Procedure 33(a) provides, in part, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). In general, a "district court has greater power to order a new trial than to overturn a jury's verdict through a judgment of acquittal." *United States v. Rothrock*, 806 F.2d 318, 321 (1st Cir. 1986). On the other hand, there are "definite limits upon a district court's right to upset a jury verdict." *Id.* at 322. The First Circuit has directed that the "remedy of a new trial [be] sparingly used, and then only where there would be a miscarriage of justice . . . and where the evidence preponderates heavily against the verdict." *United States v. Indelicato*,

of such fact because doing so would, in essence, render the Judge as a witness, which is improper under the rules of evidence." *Id.*

### C. Mr. Kinsella's Detention

Finally, Mr. Kinsella objects to prosecutorial questions that elicited responses from a Government witness that revealed he was incarcerated not only at the time he made certain telephone calls from prison, evidence of which was admitted during trial, but also that he was still incarcerated at the time of trial. *Id.* at 3. Specifically, the Government called Lt. Linda Golden of the Penobscot County Sheriff's Office as an authenticating witness to identify recordings she had made of Mr. Kinsella's telephone conversations while he was in prison. After she identified herself as an assistant jail administrator, the following exchange took place:

Q. Do you know the defendant in this case?

A. I know who - - I know he's in our facility now. I don't personally know him, no.

*Tr.* 4:12-14 (Docket # 218) (*Tr. 218*).

## II. DISCUSSION

### A. Standard for New Trial

Federal Rule of Criminal Procedure 33(a) provides, in part, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). In general, a "district court has greater power to order a new trial than to overturn a jury's verdict through a judgment of acquittal." *United States v. Rothrock*, 806 F.2d 318, 321 (1st Cir. 1986). On the other hand, there are "definite limits upon a district court's right to upset a jury verdict." *Id.* at 322. The First Circuit has directed that the "remedy of a new trial [be] sparingly used, and then only where there would be a miscarriage of justice . . . and where the evidence preponderates heavily against the verdict." *United States v. Indelicato*,

611 F.2d 376, 387 (1st Cir. 1979) (quotation marks omitted). The standards for a Rule 33 motion are rigorous. *United States v. Maldonado-Rivera*, 489 F.3d 60, 65-66 (1st Cir. 2007) (setting forth the criteria for granting a new trial based on new evidence); *Rothrock*, 806 F.2d at 322 ("[A] trial judge is not a thirteenth juror who may set aside a verdict merely because he would have reached different result."); *United States v. Rivera Rangel*, 396 F.3d 476, 485-86 (1st Cir. 2005) (setting forth the criteria for a new trial based on a *Brady* violation).

### B. The Sentencing and Trial Judge

The Defendant's argument is premised on the faulty notion that evidence that Mr. Hitchcock was sentenced by the same judge presiding over his trial somehow implied that the trial judge was vouching for Mr. Hitchcock's credibility. It is certainly true that Mr. Hitchcock's credibility was a central issue in Mr. Kinsella's trial, since he identified Mr. Kinsella as his source of illegal drugs during the criminal conspiracy and arranged for a delivery from Mr. Kinsella the day he was arrested. It is also true that Mr. Kinsella was within his rights to vigorously cross-examine Mr. Hitchcock on his agreement with the Government and his resulting sentence. The trial transcript reveals that Mr. Kinsella took full advantage of this opportunity, extensively grilling Mr. Hitchcock on this topic, confronting him with the gap between the maximum statutory sentence of twenty years for his crime and his actual sentence of twenty-four months, further reduced by good time, and extracting a concession that he "would do anything" to get his regular life back. *Tr. 217* 135:1-21; 136:22-25. Later, at closing argument, the defense forcefully attacked Mr. Hitchcock's credibility, repeatedly charging him with making up a story. *See Tr. 218* 24-42.

On re-direct examination, in an effort to rehabilitate Mr. Hitchcock, the prosecutor brought out that the trial judge was also Mr. Hitchcock's sentencing judge. The most obvious

purpose of this evidence is summarized by the saying, "once burned, twice shy": Mr. Hitchcock was less likely to commit perjury in front of a judge who had already sentenced him to prison. *See Jensen v. Phillips Screw Co.*, No. 07-2766, 2008 WL 4725459, at *2 (1st Cir. Oct. 29, 2008) (observing that "[o]nce burned is twice shy").

But, the defense develops a wholly counterintuitive spin to the prosecutor's re-direct examination. The defense proposes that by eliciting the fact that the trial judge was Mr. Hitchcock's sentencing judge, the Government was implying that the judge was vouching for his credibility. This notion is odd and elusive. The Government made no attempt to introduce direct evidence of a judicial imprimatur on the defendant's credibility and never even vaguely suggested that the jury should draw such an implication. None of Mr. Kinsella's citations to cases where a prosecutor improperly vouched for the credibility of a witness is germane, and the extension of this line of authority to this situation, where the defense is asserting that the Government somehow vouched for the judge's knowledge of a witness's credibility, is purely fanciful. *See Def.'s Reply* at 3-4.

C.  **The Government Witness, the Court, and Drug Quantity**

Mr. Kinsella's second issue is puzzling. At trial, Mr. Hitchcock testified on direct examination that he had been dealing Oxycontin pills for a year and a half. *Tr. 217* 12:21-22. He identified Mr. Kinsella as his sole supplier. *Id.* 16:21-22. He said that during this interval, he got pills from Mr. Kinsella every three to six weeks, and he would normally get from 90 to 180 pills, the most at one time being 270 to 300 pills. *Id.* 18:2-13. He testified that on March 19, 2005, he had arranged to purchase around 90 pills, and this was the number that was discussed in a recorded telephone conversation with Mr. Kinsella just before the transaction. *Id.* 27:3-4; 57:2-16.

7

On cross-examination, the defense attempted to question Mr. Hitchcock about statements he allegedly made to his attorney, Pat Perrino, reflected in a letter that Mr. Perrino had sent to the Probation Officer who had prepared a draft PSR. *Tr. 217* 88:23-25; 89:1-3. In the letter, Mr. Perrino asserted that his client had "consistently stated that the total number of pills he brokered was approximately 300, not at one time, but a total of all the contacts." *Def.'s Mot.* at Ex. B at 1. During trial, the Court deferred ruling on whether Mr. Hitchcock could be questioned about statements attributed to him in his lawyer's letter and allowed the defense to raise the issue later in cross-examination. *Tr. 217* 94:3-9. Mr. Kinsella elected not to press the question and thus waived the issue. He cannot now be heard on an issue he waived at trial. *See Parilla-Lopez v. United States*, 841 F.2d 16, 20 (1st Cir. 1988) (observing that "litigants are generally bound by the acts of their attorneys . . . even in cases where a criminal defendant is convicted as a result of his attorney's tactical error"); *United States v. Barnard*, 304 F. Supp. 2d 96, 102 (D. Me. 2004) ("Decisions of defense counsel, such as whether to pursue evidence or waive arguments, are binding on their defendants.").

Second, the defense's attempt to involve the Court in his strategic decision not to press the issue is transparently flimsy. Mr. Hitchcock testified at trial about a drug quantity in his transactions with Mr. Kinsella substantially greater than his attorney had urged the Probation Officer to find during his sentencing process. If evidence of a prior inconsistent statement on drug quantity was admissible, the proper witness would have been Mr. Perrino, who authored the letter containing the statement, not the sentencing judge, who did not author the letter and had no personal knowledge as to whether Mr. Hitchcock made the statement. *See* Fed. R. Evid. 602.

Third, by the time of Mr. Hitchcock's sentencing, the parties agreed on drug quantity. The PSR held him accountable for 739.68 kilograms of marijuana equivalent and, although his

attorney had objected to drug quantity before sentencing, at the sentencing hearing, Mr. Hitchcock did not dispute the PSR findings. *United States v. Hitchcock*, CR-06-83-B-W (D. Me. Nov. 21, 2008), *Tr.* 6:1-3; 25:6-11 (Docket # 33). Neither party objected to the court's guideline sentence findings, which incorporated Mr. Hitchcock's admission about drug quantity. *Id.* 28:15-20. In view of Mr. Hitchcock's later admission of drug quantity, Mr. Perrino's earlier argument that his client had admitted only to lower amounts is lawyer advocacy and even if a proper foundation had been made, the statement would have been of highly questionable admissibility as a prior inconsistent statement. Getting to the bottom of whether Mr. Hitchcock before sentencing sought to minimize the drug quantity for which he was responsible would have in any event been subject to a Rule 403 challenge. Fed. R. Evid. 403.

Finally, the Court's determination of drug quantity at the Hitchcock sentencing was based on an agreement of the parties. It did not represent a factual finding as to Mr. Hitchcock's credibility.

In short, the fact that the judge for Mr. Kinsella's trial was the same judge who had sentenced Mr. Hitchcock is wholly irrelevant to whether an allegedly prior inconsistent statement to Mr. Hitchcock's attorney was admissible at Mr. Kinsella's trial.

### D.     Mr. Kinsella's Detention

Lt. Golden's fleeting reference to Mr. Kinsella's current incarceration in the local jail is not grounds for a new trial. To be clear, the Government did not seek this response. The prosecutor called Lt. Golden to authenticate recordings of Mr. Kinsella's jailhouse telephone conversations that had occurred in March 2005. The prosecutor's preliminary question about whether she knew the defendant called for a yes or no answer. The lieutenant's reference to Mr. Kinsella's current presence in the jail went beyond the scope of the question. Second, there was

9

no contemporaneous objection to the answer, no request to strike the answer from the record, and no request for a cautionary instruction. Third, as Mr. Kinsella is not a United States citizen, it would not have been surprising to a jury that he was being held in the United States pending trial. Fourth, the lieutenant's response was the only reference to his current confinement during the entire trial. To the contrary, Mr. Kinsella appeared at trial well dressed in business clothes and there was no other suggestion that he was currently incarcerated. Fifth, during the trial, from its preliminary instructions to its final instructions, the Court emphasized and re-emphasized the presumption of innocence. Finally, the First Circuit has repeatedly refused to find that a new trial is justified in circumstances where, unlike the lieutenant's brief reference to incarceration, the jury actually observed the defendant in custody. *United States v. Garcia-Rosa*, 876 F.2d 209, 236 (1st Cir. 1989); *United States v. Williams*, 809 F.2d 75, 83-84 (1st Cir. 1986) (stating that "the jury's inadvertent observation outside the courtroom of a defendant in custody does not dilute [the] presumption of innocence so as to require a new trial unless there is a showing of actual prejudice.") (internal punctuation omitted); *United States v. Ayres*, 725 F.2d 806, 812-13 (1st Cir. 1984) (declining to order a new trial when on two occasions members of the jury inadvertently saw one or more of the defendants in handcuffs while they were outside the courtroom); *Dupont v. Hall*, 555 F.2d 15, 17 (1st Cir. 1977) (rejecting a habeas petition when the jury inadvertently saw the defendant in confinement when the jury's elevator stopped momentarily on the wrong floor).

### III.  CONCLUSION

The Court DENIES Arthur Michael Kinsella's Motion for New Trial (Docket # 214).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 30th day of October, 2008