UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ARTHUR MICHAEL KINSELLA, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | 1:05-cr-00027-JAW-1 |
| ) | 1:11-cv-00188-JAW |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent ) | |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Arthur Kinsella, who was convicted of crimes involving the sale and distribution of oxycodone and failure to appear in court,[1] has filed a timely petition pursuant to 28 U.S.C. § 2255, raising what he and the United States agree are claims of ineffective assistance of counsel and factual disputes regarding the sufficiency of trial evidence. (Mot. Summ. Dismissal at 6, Doc. No. 259; Reply at 2, Doc. No. 261.) Finding no merit in any of Kinsella's claims, I recommend that the court grant the United States' motion for summary dismissal and dismiss Kinsella's 28 U.S.C. § 2255 petition without holding an evidentiary hearing.

**Discussion**

The factual background surrounding Kinsella's conviction in connection with a conspiracy to smuggle Canadian-made OxyContin pills into Maine is spelled out in considerable detail in the First Circuit's decision on Kinsella's direct appeal. United States v. Kinsella, 622 F.3d 75, 77-79 (1st Cir. 2010). The facts surrounding his bail-jumping charge, also discussed at length on direct appeal, id. at 79-80, are not relevant to the instant motion. Suffice it to say, that

---

[1] The failure to appear count was severed and tried separately. This 28 U.S.C. § 2255 motion does not contain any grounds related to that conviction.

-- as is often the case in these situations -- the drug related charges against Kinsella depended, in large measure, on the testimony of a co-conspirator, in this case Christopher Hitchcock.

**Kinsella's Ineffective of Assistance of Counsel Claims**

The thrust of Kinsella's Sixth Amendment allegations relate to his trial attorney's failure to interview or call three witnesses who allegedly would have cast Hitchcock's testimony in doubt both at trial and sentencing and counsel's failure to properly cross-examine Hitchcock at trial.

With regards to his Sixth Amendment claim challenging his attorney's representation, in Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court counseled that a convicted defendant attempting to persuade a habeas court that his or her attorney did not meet the Sixth Amendment standard for effective assistance of counsel must demonstrate both that counsel's performance was deficient within the meaning of the Sixth Amendment and that the constitutionally inadequate performance resulted in prejudice to defendant's criminal case. 466 U.S. at 687. "To prove deficient performance," in a § 2255 proceeding, "a defendant must establish that counsel was not acting within the broad norms of professional competence." Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007) (citing Strickland, 466 U.S. at 687-91). "Furthermore, to prove prejudice, a defendant must establish that but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." Id. at 57-58 (citing Strickland, 466 U.S. at 694).

I "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Kinsella's complaints about his counsel's performance concern primarily his attorney's failure to call three witnesses: Attorney Pat Perrino, Doctor Starbird, and Richard Hopkins. (Kinsella Aff. Doc. No. 254-2.) Attorney Perrino represented Christopher Hitchcock. Doctor Starbird did a psychological evaluation of Hitchcock prior to Hitchcock's sentencing and before Kinsella's trial. And Richard Hopkins was a co-conspirator who bought OxyContin from Hitchcock but apparently had no direct contact with Kinsella.

**Hitchcock's Cross Examination and the Possibility of Calling Attorney Perrino and Doctor Starbird as Witnesses[2]**

There is no question but that Attorney Villa investigated certain information relating to each of the three witnesses and that she used her investigation to conduct her cross-examination of Christopher Hitchcock, the government informant and star witness against Kinsella. See Kinsella, 622 F.3d at 80 (observing that defense counsel "never missed an opportunity to paint Hitchcock as a plea-bargained witness who had set Kinsella up to avoid a 20-year sentence."). Indeed, counsel had in her possession at trial the letter that Attorney Perrino had written on behalf of his client, Hitchcock, to the probation officer. (Trial Tr. at 89, Doc. No. 217.) The efforts by Attorney Villa to cross-examine Hitchcock with respect to the Perrino letter are well documented, the subject of a side-bar, part of the court's consideration, and then Attorney Villa made a tactical decision that introduction of the letter was unnecessary given her ability to effectively cross-examine Hitchcock. (See id. at 89-137.)[3] "Ultimately, the jurors believed Hitchcock not because he is an upstanding citizen but because his testimony apparently resonated with them." Kinsella, 622 F.3d at 84 n.1. Kinsella's persistent complaint that defense

---

[2] The United States has separated its discussion of this ground into two distinct claims which is fair enough but it simplifies this discussion to group them together.

[3] The docket includes some partial transcriptions and full transcriptions. Docket Number 217 is a partial transcription. Docket No. 246 contains the portion of this cross-examination as well.

counsel failed to get Hitchcock to "admit the facts during cross examination" is frivolous; he himself ascribes this failure to counsel's being "hamstrung by [the] prosecution's case." (Reply at 3.)

As for the testimony of Dr. Starbird, Kinsella's § 2255 argument is even weaker. Trial counsel fully -- indeed aggressively -- used the information from the Starbird interview with Hitchcock in her cross examination:

> Q And you remember that you were interviewed by a doctor trying to gauge your mental capabilities, right?
> A Yes.
> Q All right. And so when you were interviewed by this doctor to gauge your mental abilities, you're telling him that you tried to tell the police the truth and they didn't want to hear it, right?
> A At first, I started out with a story. Then I ended up telling them the truth.
> Q Well, was the story that you'd never done this before?
> A No, I have done it before. It wasn't –
> Q No, I'm saying is that you just said you started out with a story. What's the story that you started out with?
> A It wasn't the truth.
> Q Well, what was the story that you started out with?
> A I can't remember.
> Q Well, but what you told Dr. Starbird, though, was that the police didn't want to hear the truth?
> A At first, what I said they didn't want to hear -- I was lying, and they wanted to hear the truth.
> …
> Q So you're saying you didn't tell Dr. Starbird that the police didn't want to hear the truth?
> A The truth is when I met with Dr. Starbird -- it's been a couple years now. I don't remember what I explicitly said at that time.
> Q Well, you told him that you thought the people were there to help you, right?
> A Well, they're doing their job, yes.
> Q Okay. And you told him there were four guys who arrested you?
> A I believe so.
> Q And you told Dr. Starbird that you asked them how to answer?
> A By telling the truth.
> Q Well, you told Dr. Starbird that they told you what to say?
> A I really can't remember that.
> Q Well, you told Dr. Starbird that the police scared you?
> A Yes, it was my first time I'd been arrested. Of course I was scared.

4

> Q Well, you told Dr. Starbird that the police scared you because they told you you'd never see your parents again?
> A They wanted me to tell the truth.
> Q You told Dr. Starbird that you were scared because the police told you you'd never see your parents again?
> ….
> A Like I said, I don't remember what I was -- at the time of my meeting with Dr. Starbird what took place.
> Q Well, you told Dr. Starbird that the police told you that you better tell them what they wanted to hear, right?
> A The truth.
> Q They wanted to hear that -- who -- that you had a supplier and that was Mike Kinsella and -- because you told Dr. Starbird you tried to tell them the truth, right?
> A At first, it wasn't the truth.
> Q Well, you told Dr. Starbird that the police didn't want to hear the truth?
> A It's been a while since I met with Dr. Starbird.

(Trial Tr. at 129-31, Doc. No. 246.)

Kinsella fails to explain how calling Dr. Starbird at Kinsella's trial would have achieved any meaningful advantage for the defense. In fact, as the United States points out, entering the Starbird report into evidence could have undercut the inference that defense counsel was trying to coax out of Hitchcock concerning this particular area of his testimony.[4] The Starbird report depicts Hitchcock as a relative novice who simply did Kinsella favor, not knowing how to say "no," and likewise, succumbed to the officer's admonitions to tell the truth. This was hardly the sort of testimony that would have advanced the argument counsel was trying to make. Thus, no matter how much Kinsella now disagrees with his attorney's decision to call neither Starbird nor Perrino as witnesses, the fact is that the failure to call these witnesses did not result in the deprivation of any reasonable defense strategy so as to render the representation ineffective. United States v. Porter, 924 F.2d 395, 397 (1st Cir. 1983). Clearly the reasonable

---

[4] This Court has firsthand knowledge of the contents of that report as it was presented at Hitchcock's sentencing. See United States v. Hitchcock, 1:06-cr-00083-JAW-1, Doc. No.29 (D. Me.). The United States quotes from this report at Page 18 of its response. (Resp. at 18, Doc. No. 259.) This report is not available on the docket.

5

defense strategy in this case was to paint Hitchcock as liar who implicated Kinsella in order to lessen Hitchcock's own exposure. For all of the reasons mentioned in the United States' responsive memorandum (Resp. at 13), calling Hitchcock's defense attorney and his psychologist might not have been the wisest tactical decision, given these particular facts. Tactical decisions such as these are exactly the sort of decisions that are especially invulnerable to hindsight review under the Sixth Amendment standard. See Strickland, 466 U.S. at 689.

**Richard Hopkins**

The third witness that Kinsella mentions in his affidavit is Richard Hopkins, a man who purchased drugs from Hitchcock and later supplied another, Greg Panther, with drugs and who ended up cooperating with law enforcement as did Hitchcock. In his affidavit Kinsella insists that he specifically instructed his attorney to subpoena Hopkins concerning how much money Hopkins paid Hitchcock per pill and on other (unspecified) issues "that were much more important." (Kinsella Aff. ¶ 10, Doc. No. 254-2.) As the United States observes, Kinsella has not presented the court with any basis for even beginning to question defense counsel's decision not to call Hopkins as a witness. (Resp. at 19-20.)[5]

---

5    Hitchcock testified with respect to his dealings with Hopkins and Kinsella:
Q Okay. And if you recall, do you recall how it is that you got started dealing OxyContin for [Kinsella] -- or with him?
A It all took place at the OTB, from just talking and communicating. That's where it all took place.
Q And what took place? What kind of conversations took place, if you can remember?
A Ah, I knew somebody that wanted some Oxys, and he had some to get rid of.
Q I'm sorry. You said you knew somebody?
A Yes, from the OTB.
Q And what did that -- who did you know?
A At the time Rick.
Q And who was Rick?
A I didn't know his last name at the time.
Q Do you know his last name now?
A Ah, I think it's Hopkins.
Q Okay. But you knew Rick. And what did you know about Rick?
A Just that he was a regular gambler at the OTB at the time and just went from there.
Q Now, that's a place you said you hung out at?

The United States points out that under 21 U.S.C. § 841(b)(1)(C) Kinsella was guilty as charged whether the jury found him responsible for 90 pills, 300 pills, or 2,400 pills. (Resp. at 10.) Ultimately the post-jury-verdict sentencing determination by this Court was determinative of the length of sentence.

The crux of all of Kinsella's 28 U.S.C. § 2255 ineffective assistance of counsel grounds is that his defense attorney made ineffectual strategic decisions with respect to these witnesses against him at trial. "The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony." Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993); see also Horton v. Allen, 370 F.3d 75, 86 -87 (1st Cir. 2004) (collecting cases on pursuing certain witness testimony in a 28 U.S.C. § 2254 proceeding and rejecting the Strickland claim). After a careful review of the record in this case I can discern no basis for concluding that counsel's trial performance fell below the Strickland threshold with regard to the tactical decisions made during the trial phase relating to witness testimony and cross-examination.

---

A Yes.
Q And is it your testimony, then -- is it your recollection that you knew Rick from the OTB?
A Yes.
Q And did you approach him or did he approach you about OxyContin?
A It was kind of the same way, I guess, kind of back and forth.
Q And why was it back and forth?
A Because he was -- he was looking -- he wanted – he wanted some, and I could get rid of some.
Q How could you get rid of some?
A By purchasing them through another person, through Mike Kinsella.
Q How is it that you knew that Mike Kinsella had some to sell?
A He brought it to my attention.
Q How did he bring that to your attention, if you recall?
A Ah, from the -- from the -- from talking about it -- previous talking about it, and it all got brought up that I could get rid of some for him.
Q Did you ever get OxyContin pills from anyone else?
A No.

(Trial Tr. at 360-61, Doc. No.246.)

**Kinsella's Factual Disputes and Sentencing Related Ineffective Assistance of Counsel Claims**

Kinsella does raise a series of straight-up factual disputes in his affidavit. He insists that he did not participate in a drug transaction with Hitchcock on December 21, 2004, or on March 19, 2005; he never used the word OxyContin or referred to any other drug in the taped conversations entered into evidence; he never spoke in code on the phone with Hitchcock; it was Hitchcock who used the code in an attempt to set Kinsella up; and Kinsella's vehicle never crossed the Canadian to United States Border on December 21, 2004.

These concerns -- they are not really framed as 28 U.S.C. § 2255 grounds -- have no traction in this proceeding.[6] Kinsella had a full review of his claims on direct appeal and there is no reason to revisit sufficiency of the evidence issues in the context of this habeas review. See Bousley v. United States, 523 U.S. 614 (1998); see also Stone v. Powell, 428 U.S. 465 (1976); Cofske v. United States, 290 F.3d 437, 441 (1st Cir. 2002). As the United States argues: "Kinsella's attempt to introduce yet a new theory of a 300-pill total for the first time in this motion is … forfeited, waived and foreclosed as previously litigated." (Resp. at 10.)

The First Circuit explained on Kinsella's direct appeal:

> Calculating drug quantity is not a science, and a district judge tasked with this job is not required to be a mathematician or to make findings with computerized certainty. See, e.g., [United States v. Platte, 577 F.3d 387, 392-93 (1st Cir.2009)]. When there are no hard drug-quantity numbers, a reasoned estimate will do, and when the record supports more than one estimate, the judge's selection "from among plausible alternatives cannot be clearly erroneous." United States v. Morillo, 8 F.3d 864, 871 (1st Cir.1993).

---

6     Kinsella as much as admits this in his reply memorandum when he insists that it is the ineffective assistance claims that he is pressing. (Reply at 4-5.) He does try to introduce a new claim of ineffective assistance against appellate counsel in an argument as to why the court should consider these claims – arguing that he told appellate counsel to raise these issues on direct appeal (Reply at 22-23) – but I conclude that this new spin does not merit any consideration given the facial lack of merit to the factual challenges and the fact that he did not adequately present this theory of relief in his initial 28 U.S.C. § 2255 motion.

Kinsella, 622 F.3d at 86 -87.  Nothing in Kinsella's argument concerning counsel's performance at sentencing raises a tenable 28 U.S.C. § 2255 claim.  (See Reply at 23-24.)  He continues to quibble with the drug quantities found but gives no details as to how counsel was responsible for the evidence relied on by this Court in arriving at its sentence.  The First Circuit extended considerable latitude to the sentencing judge regarding drug quantity determinations and there is no reason to fault counsel for the result.

This Court is very familiar with both the trial and sentencing phases of Kinsella's prosecution and can draw on its first-hand experience in reviewing these claims.  United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).  In my view Kinsella has not raised any issues that call counsel's performance in doubt or seriously challenge either the verdict or the resulting drug quantity determination and sentence.  In these circumstances there is no need for evidentiary hearing or further development of the record.

## CONCLUSION

As set forth above, I recommend that the Court grant the United States' motion for summary dismissal of this 28 U.S.C. § 2255 motion.  I further recommend that a certificate of appealability should not issue in the event Kinsella files a notice of appeal because there is no substantial showing of the denial of a constitutional right as contemplated by 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

September 30, 2011.